Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWARD DANCY,                          :
                                       :
      Petitioner,              :          Civ. No. 20-7260 (PGS)
                                       :
    v.                               :
                                       :
ATTORNEY GENERAL OF THE                :
STATE OF NEW JERSEY, et al.            :          **OPINION**
                                       :
      Respondents.             :
                                       :

## PETER G. SHERIDAN, U.S.D.J.

### I.  INTRODUCTION

Petitioner, Edward Dancy ("Petitioner"), is a state prisoner proceeding *pro se* with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 4.) For the following reasons, the amended petition is denied and a certificate of appealability shall not issue.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

The factual background giving rise to Petitioner's judgement of conviction was stated by the New Jersey Superior Court, Appellate Division during Petitioner's direct appeal as follows:

> On February 16, 2005, Ms. Alexander was returning alone to her third floor apartment with groceries, when upon reaching the landing, she saw [Petitioner] standing there

holding a bag. She recognized [Petitioner] because, a year earlier, he had dated her roommate and occasionally would stay at the apartment. [Petitioner] asked Alexander questions about her roommate's current dating status, the details of which Alexander declined to reveal. Alexander refused to let [Petitioner] into the apartment when he asked. After that, she watched him leave.

As she unlocked the door to the apartment, [Petitioner] reappeared. This time, he pointed a gun at her neck, grabbed her jacket and demanded to enter the apartment, saying he did not want to "make this messy," and that he wanted to talk. [Petitioner] forced her into the kitchen and onto her knees where he used zip ties to secure her hands behind her back. For the next forty-five minutes, while he nervously pacing back and forth, [Petitioner] asked Alexander questions about her roommate.

Unknown to [Petitioner], Alexander worked one of her hands free. At a point when [Petitioner] looked away, and knowing he had a prosthetic leg, she ran out the door, and out of the building to the superintendent's office, where she screamed for help. The police arrived in five minutes. Alexander told them about [Petitioner]. They searched for him, but he could not be found.

The indictment was returned against the [Petitioner] in December 2005. He was arrested on these charges in June 2007 while in jail. While this case proceeded to trial, he was free on bail. [Petitioner's] motion for a speedy trial was denied in July 2011.

Following trial in January 2013, he was convicted of first-degree kidnapping, N.J.S.A. 2C:13-1b; a disorderly persons offense of false imprisonment, N.J.S.A. 2C:13-3; and third-degree burglary, N.J.S.A. 2C:18-2.1 He was sentenced in June 2013 on the kidnapping charge to a term of twenty years in prison with an 85% period of parole ineligibility. He was sentenced to a concurrent term of five years on the burglary charge.

(ECF No. 8-11, *State v. Dancy*, A-4928-13T1, 2016 WL 5746635 at * 1 (N.J. Super. Ct. App. Div. Oct. 4, 2016).)

Petitioner filed a direct appeal. The Appellate Division affirmed the judgment of conviction on October 4, 2016. *Id.* The New Jersey Supreme Court denied certification on Petitioner's direct appeal. (ECF No. 8-16.)

Petitioner filed a post-conviction relief ("PCR") petition. The PCR court denied his petition on December 8, 2017. (*See* ECF Nos. 8-21, 8-22.) Petitioner appealed, and the Appellate Division affirmed the denial on January 9, 2019. (ECF No. 8-26.) The New Jersey Supreme Court then denied Petitioner's petition for certification. (ECF No. 8-30.)

Petitioner filed his original habeas petition on June 15, 2020. (ECF No. 1.) On June 19, 2020, the Honorable Michael A. Shipp filed an Order pursuant to *Mason v. Myers*, 208 F.3d 414 (3d Cir. 2000).[1] (ECF No. 2.) Petitioner then filed the instant amended habeas petition on August 3, 2020. (ECF No. 4.) Respondents filed an answer. (ECF No. 8.)

## III. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides, the district court "shall entertain an

---

[1] This matter was reassigned to the undersigned on September 28, 2021. (ECF No. 10.)

3

application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the

4

Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## IV. DISCUSSION

### A. Ground One

In Ground One, Petitioner argues that there was insufficient evidence to support his conviction for first degree kidnapping. (ECF No. 4 at 7.) Petitioner appears to argue that the evidence was insufficient to show that Petitioner did not release the victim in a safe place because the States' position at trial was that the victim escaped prior to release. (*Id.*)

Petitioner raised this claim on direct appeal and the Appellate Division denied it as follows:

> [Petitioner] contends his conviction for kidnapping was not supported by, and was against the weight of, the evidence. However, because Ms. Alexander testified that until she was able to escape, [Petitioner] held a gun to her, tied her hands behind her back in her apartment while stating "we don't want to make this messy," we do not

6

> hesitate to reject [Petitioner's] contentions, finding instead
> there was ample evidence to support the verdict.

*Dancy*, A-4928-13T1, 2016 WL 5746635 at * 4.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) ("[T]he clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in *Jackson* . . . .").

The dispositive question under *Jackson* is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). The analysis under *Jackson* requires courts to analyze the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In conducting this review, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*; *see also Orban v. Vaughn*, 123 F.3d 727, 731 (3d Cir. 1997). Thus, where the evidence could support

7

conflicting inferences, the habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution." *Jackson*, 443 U.S. at 326; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).

Petitioner argues that there was insufficient evidence to find him guilty of first-degree kidnapping. "When assessing such claims on a petition for habeas relief from a state conviction, the sufficiency of the evidence standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Robertson v. Klem*, 580 F.3d 159, 165 (3d Cir.2009) (quoting *Jackson*, 443 U.S. at 324 n.16). In New Jersey, kidnapping is defined as follows:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
>
> (1) To facilitate commission of any crime or flight thereafter;
>
> (2) To inflict bodily injury on or to terrorize the victim or another;

(3) To interfere with the performance of any governmental or political function; or

(4) To permanently deprive a parent, guardian, or other lawful custodian of custody of the victim.

N.J. STAT. ANN. § 2C:13–1b. Additionally, the kidnapping statute provides that kidnapping is a first-degree offense, but that it is a crime in the second-degree if the actor releases the victim in a safe place prior to apprehension.

Here, the Appellate Division explained that Petitioner restrained the victim by tying her hands behind her back and then held her at gun point. Additionally, as noted by the Appellate Division, the victim escaped from Petitioner. Petitioner did not release the victim from her confinement to a safe place. Petitioner fails to argue that there was any evidence that he released the victim to a safe place prior to apprehension. Under such circumstances, this Court finds that the Appellate Division did not unreasonably apply clearly established federal law or deny this claim based on an unreasonable determination of the facts. Accordingly, habeas relief is not warranted on Ground One.

**B. Ground Two**

In Ground Two, Petitioner argues that the trial court erred in denying his motion to dismiss the indictment because Petitioner was deprived of his right to a speedy trial. (ECF No. 4 at 8.)

The Appellate Division denied this claim on direct appeal as follows:

9

[Petitioner] contends the judge should have dismissed the indictments because [Petitioner] was deprived of his right to a speedy trial.

We will sustain a trial judge's determination that [Petitioner] was not deprived of his constitutional right to a speedy trial unless that determination was "clearly erroneous." *State v. Merlino*, 153 N.J. Super. 12, 17 (App. Div. 1977). When evaluating a speedy trial claim, a court must review and balance the four factors identified in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101, 117 (1972).[2] *See State v. Szima*, 70 N.J. 196, 201 (adopting the standard from *Barker*), certif. denied, 429 U.S. 896, 97 S. Ct. 259, 50 L. Ed. 2d 180 (1976).

Delays caused by "the trial court itself . . . are attributable to the State and not to the defendant." *State v. Farrell*, 230 N.J. Super. 425, 451 (App. Div. 1999) (citing *Barker*, *supra*, 407 U.S. at 531, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117). However, any delay caused or requested by the defendant "would not weigh in favor of finding a speedy trial violation." *State v. Gallegan*, 117 N.J. 345, 355 (1989). There is no bright-line rule for what constitutes excessive delay. *State v. Cahill*, 213 N.J. 253, 258, 277 (2013).

Although [Petitioner's] trial did not commence until June 2013, the delay was attributable both to [Petitioner] and the State. The defense attorney sustained a disabling injury; the judge suffered a stroke and motor vehicle accident; [Petitioner] was hospitalized with a gunshot wound from an unrelated matter. [Petitioner] was a fugitive on these charges until June 2007. He did not file a motion for a speedy trial until June 2011. Then, when the case had a firm trial date, [Petitioner] retained new counsel

---

[2] These factors include: (1) length of delay, (2) reasons for delay, (3) assertion of a speedy trial claim, and (4) prejudice to the defendant. *Ibid.*

> which accounted for the delay from 2011 to 2013. He
> remained free on bail. He did not demonstrate prejudice
> because the major witness, Ms. Alexander, remained
> available as a witness. On these facts, we are satisfied the
> trial court did not err in denying [Petitioner's] speedy trial
> motion.

*Dancy*, A-4928-13T1, 2016 WL 5746635 at * 3-4.

The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. The right to a speedy trial is "fundamental" and is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *See Kloper v. North Carolina*, 386 U.S. 213, 223 (1967). In *Barker*, 407 U.S. at 530, the Supreme Court adopted a balancing test to determine a violation of the Speedy Trial Clause. "We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*; *accord United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir.2014); *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir.1993). Moreover, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary

promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citation omitted).

The Supreme Court has held in *Doggett* that the eight-year delay between Doggett's indictment and arrest triggered the speedy trial inquiry, but noted that "the lower courts have generally found 'post accusation delay'" long enough to trigger the *Barker* inquiry "at least where that delay approaches one year." *Id.* at 652 n. 1. Once the accused makes this showing, "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652. Notably, the government has the burden to justify a delay once the *Barker* inquiry has been triggered. *See Barker*, 407 U.S. at 527; *Velazquez*, 749 F.3d at 175.

Petitioner fails to show that the Appellate Division's denial of his speedy trial claim was contrary to, or an unreasonable application of federal law. *See Douglas v. Cathel*, 456 F.3d 403 (3d Cir.2006) (affirming denial of § 2254 petition asserting violation of speedy trial because the state courts' balancing of the *Barker v. Wingo* factors was not objectively unreasonable). The trial court held a hearing on Petitioner's 2011 speedy trial motion. (*See* ECF No. 8-31.) The Appellate Division explained that although Petitioner was indicted in 2005, he was a fugitive on those charges until 2007. Additionally, the delays were attributable to both the state and Petitioner. There were court adjournments in the case due to the prosecution not

12

being ready, the prosecutions' witness being unavailable, an injury to defense counsel, an injury to the trial judge, and Petitioner being shot. (*See id.*) Following the trial court's denial of Petitioner's speedy trial motion, the trial court set another trial date. (*See id.*) The Appellate Division explained that Petitioner then hired new defense counsel which resulted in further delay of his trial. Finally, the Appellate Division found that Petitioner could not demonstrate prejudice because Petitioner remained free on bail and the major witness remained available as a witness.

The Appellate Division relied on *Barker* in making the determination that Petitioner's speedy trial rights were not violated and applied the *Barker* factors in a reasonable manner; thus, the state court determinations are neither contrary to nor an unreasonable application of the governing Supreme Court law. Petitioner is not entitled to habeas relief on this claim.

## C. Ground Three and Ground Five

In Ground Three, Petitioner argues that the trial court erred in recharging the jury using the same verdict sheet. (*See* ECF No. 4 at 9.) Petitioner fails to make any argument regarding this vague claim. In Ground Five, Petitioner argues that the trial court's jury instructing regarding kidnapping was incomplete and erroneous, and clearly capable of creating an unjust result. (*See id.* at 12.) Petitioner again makes a vague claim without any specificity. However, on direct appeal Petitioner argued that the trial court failed to properly instruct the jury on the distinction between harm

and released unharmed in the crime of kidnapping. (*See* ECF No. 8-8 at 5-14.) The Court will address these claims together.

The Appellate Division denied these claims on direct appeal, finding the following:

> [Petitioner] contends the instruction on kidnapping and the verdict sheet contained error. We have reviewed the charge and find it substantially reflective of the Model Jury Charge. Model Jury Charge (Criminal), § 2C:13-1(b)(1) to (3). Additionally, we are satisfied the judge appropriately answered the jury's questions and explained the verdict sheet.

*Dancy*, A-4928-13T1, 2016 WL 5746635 at *5.

Questions relating to jury charges are normally matters of state law and not cognizable in federal habeas review. *See Engle v. Isaac*, 456 U.S. 107 (1982); *Henderson v. Kibbe*, 431 U.S. 145 (1977). The district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson*, 431 U.S. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)).

"In reviewing a jury instruction, we look to see if the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *United States v. Hart*, 273 F.3d 363, 373 (3d Cir. 2001) (citation and quotation marks omitted). Here, the trial judge provided model jury instructions

on kidnapping and adequately answered the jurors' questions regarding the instructions.

Prior to charging the jury, the judge and counsel had lengthy discussions regarding the charge and the judge used a copy of the model jury instruction on kidnapping. (*See* ECF No. 8-38 at 21-63.) The trial court then gave the following detailed charge on kidnapping and the lesser included offense and separately charged offense of criminal restraint:

> All right. Now, we get into the charges. The defendant is charged with the crime of kidnapping. The - the indictment reads; February 16, 2005, in Woodbridge, unlawfully did confine Rhonda Alexander for a substantial period with purpose to facilitate the commission of the crime, or flight thereafter -- of a crime or flight thereafter, and or inflict bodily injury on or to -- or to terrorize Rhonda Alexander and fail to release said -- Rhonda Alexander unharmed, and or in a safe place prior to apprehension.

> All right. Now, the statute says -- the pertinent part of the statute in which this indictment is based reads as follows; a person is guilty of kidnapping -- if he unlawfully confines another for a substantial period with any of the following purposes; one, to facilitate commission of any crime or flight thereafter -- or to inflict bodily injury on or to terrorize the victim or another -- and -- it should be and or -- to facilitate commission of any crime or flight thereafter, and or to inflict bodily injury on or to terrorize the victim or another.

> In order for you to find the defendant guilty of kidnapping, The State is required to prove each of the following two elements to you, beyond a reasonable doubt.

One, that the defendant unlawfully confined Rhonda Alexander -- for a substantial period. And two, that the defendant's -- that the purpose was to facilitate the commission of any crime or flight thereafter, and or to inflict bodily injury on -- or terrorize the victim.

In relation to the first element, you will note that I've used the term, unlawfully removed -- no, strike that -- strike that.

In relation to the first element you will note that I've used the term, unlawfully confined. A confinement is unlawful, it is accomplished by force, threat or deception. Unlawful confinement must be for a "substantial period." However, for this purpose a "substantial period" is not measured in seconds, minutes or hours, nor by any other standard based strictly on the passage of time. Rather, a "substantial period" is one that is significant, in that it is more than incidental to the underlying crime and substantially increases the risk of harm to the victim. That increased risk of harm must not be trivial. If the victim is confined for only a slight period of time, and such confinement does not create the isolation and increased risk of harm that are at the heart of the kidnapping statute, then you should not convict the defendant of kidnapping -- of the kidnapping charge.

Therefore, in determining whether confinement was substantial, you may consider one, the duration of the confinement. Two, whether the confinement occurred during the commission of a separate offense. Three, whether the confinement which occurred is inherent in a separate offense. Four, whether the confinement created a significant danger to the victim independent of that posed by the separate offense.

The second element -- State is required to prove is that the confinement was with the purpose to facilitate the

16

commission of any crime or flight thereafter, and or to inflict bodily injury on or terrorize the victim or another.

. . .

I told you that to constitute kidnapping, an unlawful confinement must have been with a specified purpose, therefore I must define purpose for you.

A person acts purposely with respect to the nature of his conduct or a result of his conduct if it is his conscious object to engage in conduct of that nature or to cause such a result, that is, if the person means to do what he does or to cause such a result. A person acts purposely with respect to attendant circumstances if the person is aware of the existence of such circumstances, or believes that -- or hopes that they exist. With purpose, designed, with design, or equivalent terms have the same meaning.

Now, the nature of the purpose with which the defendant acted towards the victim is a question-- is a question of fact for the jury to decide. Purpose is a condition of the mind -- cannot be seen, can only be determined by inferences drawn from the defendant's conduct, his words, his acts as they have -- may have been presented in the evidence you have heard and seen in the case. Not necessary the State produce a witness or witnesses to testify the State - - the defendant stated, for example, that he had a -- that his purpose in confining -- Rhonda Alexander -- was to facilitate []the commission of any crime or flight thereafter, that is to aid in committing a crime or fleeing afterwards, and or to inflict bodily injury on or to terrorize the victim.

It's within your power of the jury -- it's within the power of the jury to find that proof of -- a purpose has been furnished beyond a reasonable doubt, by inferences which you may draw from the nature of the acts, the circumstances     surrounding     the     conduct     under

17

investigation as they have been presented in the evidence you have heard and seen in this case.

If you find the State has proved beyond a reasonable doubt that the defendant committed the crime of kidnapping, you must go on to determine whether the State has also proven beyond a reasonable doubt that he knowingly harmed Rhonda Alexander -- the harm component can include physical, emotional or psychological harm.

In this case, the State alleges that the defendant -- the defendant confined Rhonda Alexander by tying her up, displaying a gun, resulting in emotional, psychological and physical harm.

Okay. Now, -- okay. Now, the other aspect of this -- in this indictment was -- and or failed to release -- Rhonda Alexander unharmed or in a safe place, prior to apprehension. So in order to determine whether the victim was released in a safe place you must examine the totality of the circumstances, evaluate the evidence presented at trial, in its entirety. You may consider the following, the age of the victim, any other physical or mental conditions of the victim. The location, condition of the area at the time of the release. Circumstances surrounding the release. Any other circumstances occurred, existed surrounding the release.

Again, this is a person that acts knowingly with respect to the nature of his conduct or [] circumstances -- he's aware that his conduct is of that nature, or that such circumstances exist, or he's aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he's aware that it is practically certain that his conduct will cause such a result. Knowingly, with knowledge or equivalent terms have the same meaning.

Now, again, knowledge is a condition of the mind. Can't be seen. Can only be determined by inferences from

conduct, words or acts. A state of mind is rarely susceptible of direct proof, but must ordinarily be inferred from the facts.

Therefore, it's not necessary, members of the jury, that the State produce witnesses to testify that an accused said he had a certain state of mind when he engaged in a particular act. It's within your power to find that such proof has been furnished beyond a reasonable doubt by inference, which may arise from the nature of his acts, his conduct, from all he said all he did at the particular time and place, all of the surrounding circumstances.

If you find the State has not proven any element of the crime of kidnapping beyond a reasonable doubt, you must find the defendant not guilty. If you find the State has proven every element beyond a reasonable doubt, then you must find the defendant guilty of kidnapping.

If you find The State has proven beyond a reasonable doubt the defendant is guilty of kidnapping, but you have reasonable doubt as to whether the State has proven beyond a reasonable doubt that he knowingly harmed Rhonda Alexander or knowingly did not release her in a safe place prior to his apprehension you should find the defendant guilty of kidnapping in the second degree.

If you find beyond a reasonable doubt that the defendant is guilty of kidnapping and that he knowingly harmed Rhonda Alexander, or knowingly did not release her in a safe place prior to his apprehension, you find he's not guilty of kidnapping in the first degree.[3]

All right. Now, what we have for counts one, two and three, as opposed to counts four, five - - and five, we have what are called lesser included offenses. So you only get to these lesser included offenses if you find the defendant

---

[3] The Court notes that the trial court misspoke here, instructing the jury to find "not guilty," when the trial meant to say "guilty."

not guilty of the charged crime. You only get to it if you
don't find him guilty of the --. So, in other words, if, and
only if you find the defendant not guilty of kidnapping,
then you have to go on to the lesser included.

The law requires The Court instruct the jury with respect
to possible lesser included offenses, even if they are not
contained in the indictment. Now, just because The Court
is instructing you concerning these offenses does not mean
The Court has any opinion one way or the other about
whether the defendant committed these, or any, offenses.
You should consider these offenses along with those for
which the defendant is indicted.

However, you are not to render a verdict on these offenses
or answer the questions on the verdict sheet unless you
find that The State has failed to meet its burden with regard
to the offenses in the indictment. Okay. So, the first lesser
included -- offense is also count two in the indictment, but
you have to also -- in other words, if you find the defendant
not guilty of the kidnapping, you still have to go on and
answer this in count one. And as well as count two. So,
that's the way it's -- it's charged, so that what we have to
do.

So, the defendant -- lesser included charge of criminal
restraint -- and I'm not gonna -- I don't think I have to
define this again for you in count two, because this is the
-- this is the charge for the lesser included in count one,
and it's also the charge for count two. Okay?

So, here the lesser included for count --one and also this
would be the charge for count two, criminal restraint. The
defendant is charged in the indictment with the crime of
criminal restraint. The statute upon which the charge is
based reads in pertinent part as follows: A person is guilty
of criminal restraint if he knowingly restrains another
unlawfully in circumstances exposing the other to risk of
serious bodily injury. So, in order for you to find the

20

defendant guilty of this offense, The State must prove the following elements of this offense beyond a reasonable doubt, one, that the defendant knowingly restrained Rhonda Alexander.

Two, that the defendant knew the restraint was unlawful. Three, that the restraint was under circumstances in which the defendant knowingly exposed Rhonda Alexander to the risk of serious bodily injury.

The first element The State must prove beyond a reasonable doubt is that the defendant knowingly restrained Rhonda Alexander. The word "restraint" means confinement, abridgement or limitation. Restraint involves hindrance, confinement or restriction of liberty.

The second element The State must prove beyond a reasonable doubt is that the defendant knew that the restraint was unlawful. The term "unlawful" means to accomplish the restraint by force, threat or deception.

The third element that the State must prove beyond a reasonable doubt is that the restraint was under circumstances in which the defendant knowingly exposed Rhonda Alexander to a risk of serious bodily injury. The term "serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the functions of any bodily member or organ.

With regard to all three of these elements, the State must prove beyond a reasonable doubt that the defendant acted knowingly. A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain his conduct will cause such a result. Knowing, with knowledge or equivalent terms have the same meaning.

21

Again, knowledge is a condition of the mind, can't be seen, can only be determined by inferences from the defendant's conduct, words or acts. A state of mind is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. Therefore, it is not necessary The State produce witnesses to testify that an accused said he had a certain state of mind when he engaged in a particular act.

It is within your power to find that such proof has been furnished beyond a reasonable doubt by inference which may arise from the nature of his acts, his conduct, and all he said, all he did at the particular time and place, from all of the surrounding circumstances reflected in the testimony and evidence adduced at trial.

If after a consideration of all of the evidence you are convinced beyond a reasonable doubt The State has proven all three elements of the offense, you must find the defendant guilty. If you find The State has failed to prove any of the elements of the offense beyond a reasonable doubt, you must find the defendant not guilty.

(ECF No. 8-39 at 100-112.)

The trial judge then instructed the jury on the verdict sheet and explained that if they found Petitioner guilty on count one kidnapping, then the jury had to answer whether A) Petitioner's purpose was to facilitate the commission of a crime or flight thereafter and B) Petitioner's purpose was to inflict bodily injury on or to terrorize the victim. (*Id.* at 183-184.) Finally, the jury was instructed that if they found Petitioner unanimously guilty of A and B, they were to then answer the next interrogatory "which says, knowingly harmed - - Rhonda Alexander, not guilty or

guilty. Knowingly did not release her in a safe place prior to his apprehension, not guilty or guilty." (*Id.* at 184.)

The following day, the jury sent the judge a note, asking the court to define "purpose," "intent versus actions," and "terrorize." (ECF No. 8-40 at 11-12.) Regarding criminal restraint, the jury asked the judge to explain "risk of serious bodily injury" and asked why criminal restraint appeared twice on the verdict sheet. (*Id.*) In discussing these questions with counsel, the state realized that the wording on the verdict sheet for count one was confusing because the first question asked the jury to answer guilty or not guilty to the general charge of kidnapping and that question should be whether the jury found Petitioner guilty of unlawfully confining the victim for a substantial period of time. (*See* ECF No. 8-41 at 21-22.) Defense counsel object to the court amending the verdict sheet and argued that the court could remedy any issues with the verdict sheet by answering the jury's questions. (*Id.* at 22-27.)

The trial court then explained to the jury that regarding the verdict sheet, if the jury found Petitioner guilty of knowingly confining the victim unlawfully for a substantial period of time, then the jury should proceed to questions A and B that are discussed above. (*Id.* at 42-45.) The judge then instructed if the jury found Petitioner guilty of A and/or B, they should continue to answer the unharmed/release questions on the verdict sheet. (*Id.* at 45-46.) The judge defined terrorized, re-read the charge

on risk of serious bodily injury, and explained the criminal restraint was both a lesser included offense on count one and a substantive count on count two and the jury must consider count two regardless of its verdict on count one. (*Id.* at 47-49.)

This Court finds that Petitioner has not demonstrated that the trial court's jury instructions on kidnapping were inconsistent with the instructions required under New Jersey law. In fact, the Appellate Division noted that the trial court followed the Model Jury Charge for kidnapping. Additionally, Petitioner has not demonstrated that the entire trial and the conviction were so prejudiced by the charge as to violate the principles of fundamental fairness and due process. The conviction was neither fundamentally unfair, nor violated due process.

Regarding the trial court's answering of the jury's questions and recharging them, generally, "[a] trial court . . . has discretion in deciding how to respond to a jury note." *Marra v. Larkins*, 46 F. App'x 83, 87 (3d Cir. 2002). A review of the state court record shows that the trial judge thoroughly discussed the jury's questions and how the court should respond with counsel. The trial judge then adequately responded to each question from the jury and explained how the jury was to answer the interrogatories on the verdict sheet. The Appellate Division reviewed Petitioner's argument and found that the trial judge appropriately answered the jury's questions and explained the verdict sheet. Petitioner has failed to show that the decision of the state court was contrary to, or an unreasonable application of, clearly established

federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on Grounds Three or Five.

### D. Ground Four

In Ground Four, Petitioner argues that his sentence was "manifestly excessive and unduly punitive." (ECF No. 4 at 10.)

A federal court's ability to review state sentences is limited to challenges based on "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)). Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)); *see also* 28 U.S.C. § 2254(a).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v.*

*Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 290–92 (1983)). "In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes." *Id.*

The first factor acts as a gateway to the proportionality inquiry. The Eighth Amendment only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16–17 (D.N.J. Mar. 28, 2018). If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge ends. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014). "Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law" over which this Court has no jurisdiction. *E.g.*, *Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at *12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Here, Petitioner was convicted of one count of first-degree kidnapping. *See* N.J.S.A. §§ 2C:13-1b(1). In New Jersey, first-degree kidnapping calls for a sentence range of fifteen to thirty years. *See* N.J.S.A. § 2C:13-1b(1). Petitioner was sentenced

to twenty years imprisonment, which is in the middle of the statutory range proscribed under New Jersey statutory law. Accordingly, he fails to prove that his sentence violates the Eighth Amendment. *See Burtrim*, No. 14-4628, 2018 WL 1522706 at *17 (denying federal habeas relief on excessive sentence claim noting petitioner's sentence fell within statutory limits); *see also United States v. Miknevich*, 638 F.3d 178, 186 (3d. Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.")

A twenty-year sentence for first-degree kidnapping is not disproportionate. Consequently, Petitioner's sentence for first-degree kidnapping does not violate the Eighth Amendment. As such, Petitioner's fourth ground for habeas relief is denied.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a

constitutional right. Thus, no certificate of appealability shall issue.

## VI. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate

of appealability will not issue.  An appropriate Order follows.

Dated:

PETER G. SHERIDAN, U.S.D.J.